Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

DEPOSITION OF AN D. NGUYEN, Ph.D
DECEMBER 17, 2024

ADAM SINGLETON, JR.,

Plaintiff,

vs.                          CASE NO.
2:23-cv-5757-BHH

LOWE'S HOME CENTERS, LLC,

Defendant.

_____

TIME:              1:30 PM

LOCATION:          VIDEOCONFERENCE/VIDEOTAPED
DEPOSITION

REPORTED BY:    BINNIE DENISE PURSER, RDR, CRR

                    A P P E A R A N C E S

     ON BEHALF OF PLAINTIFF VIA VIDEOCONFERENCE:

                    MORGAN & MORGAN
                    BY:  Steven E. Nauman, Esq.
                    20 N. Orange Avenue
                    Suite 1600
                    Orlando, Florida 32801
                    (407)244-3962
                    snauman@forthepeople.com

     ON BEHALF OF DEFENDANT VIA VIDEOCONFERENCE:
                    TURNER, PADGET, GRAHAM &
                    LANEY, P.A.
                    BY:  David S. Cobb, Esq.
                    40 Calhoun Street
                    Suite 200
                    Charleston, SC 29401
                    (843)576-2800
                    dcobb@turnerpadget.com

              ALSO PRESENT:
                    Joel Ruiz, Videographer

EXAMINATION

BY MR. NAUMAN                                          5


DEPONENT CORRECTION SHEET                              36

CERTIFICATE OF REPORTER                                37


DEFENDANT'S EXHIBIT 1, CV                              9

DEFENDANT'S EXHIBIT 2, SEA Report                     14

DEFENDANT'S EXHIBIT 3, Testimony Log                  32

Page 4

THE VIDEOGRAPHER:  Good afternoon.  We are going on the record at 1:30 p.m. on December 17th, 2024.  Please know that this deposition is being conducted virtually.

Quality of recording depends on the quality of camera and Internet connection of participants.  What is seen from the witness and heard on screen is what will be recorded.

Audio and video recording will continue to take place, unless all parties agree to go off the record.

This is media unit number 1 of the video recorded deposition of Dr. An Nguyen, taken by counsel for Plaintiff in the matter of Adam Singleton, Junior, versus Lowe's Home Centers, LLC, filed in the United States District Court, District of South Carolina, Charleston Division, Case Number 2:23-cv-5757-BHH.

This deposition is being conducted remotely, using virtual technology.

My name is Joel Ruiz, representing Veritext, and I am the videographer.  The court reporter is Binnie Purser from the firm Veritext.

I am not authorized to administer an oath.  I am not related to any party in this

Page 5

action, nor am I financially interested in the outcome.

If there are any objections to proceeding, please state them at the time of your appearance.

Counsel and all present will now state their appearances and affiliations for the record, beginning with the noticing attorney.

MR. NAUMAN:    Good afternoon, Steven Nauman for the Plaintiff, Adam Singleton.

MR. COBB:    I am David Cobb.  I am here on behalf of Lowe's.

THE VIDEOGRAPHER:  Will the court reporter please swear the witness and then counsel may proceed.

AN D. NGUYEN.

having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. NAUMAN:

Q.   Good afternoon, Dr. Nguyen.  How are you today?

A.   I am good.

Q.   Have you ever had your deposition taken before?

A.    I have.

Q.    About how many times?

A.    Once.

Q.    Okay.  I will go over some ground rules then to make sure this goes as seamlessly as possible.  Okay?

A.    Sure.

Q.    Probably the most important rule is to make sure that you and I don't speak over each other, because that can make the court reporter's job difficult.

Does that make sense?

A.    Yes.

Q.    So I will make sure to let you finish the answer to my question before I ask my next question.  All I ask is that you let me finish my question before you start answering.

Does that make sense?

A.    Yes.

Q.    You may occasionally hear an objection from Mr. Cobb, if he finds something objectionable.  Unless he instructs you not to answer because of the claim of privilege, you will still have to answer my question.  Do you understand?

A.    Yes.

Q. I don't think I am going to be very long with you today. But if for some reason you want to take a break for whatever reason it is, that is fine, just let me know.

All I ask is that you complete your answer to a question, before we go on that break.

Does that make sense?

A. Yes.

Q. All right. Have you ever been convicted of a crime?

A. I have not.

Q. Are you currently under the influence of any drug, medication or alcohol that might impair your ability to understand my questions or to testify truthfully today?

A. No.

Q. Did you bring anything with you to this afternoon's deposition?

A. I have the report that I prepared in front of me.

Q. Okay. Is that the only thing you have with you in front of you?

A. Yes.

Q. Do you have any file materials relating to this case that you can access or in front of you

Page 8

right now?

A.   I can access the file materials that you request me.  I have Internet access that would allow me to do so.

Q.   Okay.  It might not be necessary.  But I will let you know if I want you to access something.  Okay?

A.   Okay.

Q.   What did you do to prepare for today's deposition?

A.   I have a meeting with my client, I went over the report and I reviewed all the information again.

Q.   Aside from that meeting with your client, did you speak with anybody about today's deposition?

A.   We have like a training team at my company that like help people prepare for a deposition.  So I talk to the training team.

Q.   And what did they tell you about taking a deposition?

A.   They just go over the ground rules of depositions and like what to -- like how to prepare for depositions and things to review, things to bring with you to a depo, things like that.

Page 9

Q.   Okay.  What do they say about things to review?

A.   Um, so just like make sure to review like the report and any relevant information to go over my conclusions and my opinions again.

Q.   Did they talk to you about how to answer questions?

A.   We talk about like the general manner of answering questions.  But not going into any specific questions.

Q.   What did they say about the general manner and how to answer questions during a deposition?

A.   Be clear, be concise and listen to the questions.

Q.   I like it.  Okay.  So I understand from your curriculum vitae that you have been at SEA since 2023; is that accurate?

A.   Yes.

Q.   I will go ahead and mark your CV as Exhibit 1 to your deposition.

(DEFENDANT'S EXHIBIT 1, CV, was marked for identification.)

BY MR. NAUMAN:

Q.   Do you have that available to you?

Page 10

A.    Yes.

Q.    First I want to ask you, what do you do currently at SEA?

A.    I am a human factors consultant at SEA. So I do a range of work from consulting, provide consultation to businesses about product safety.  I do some litigation work.  So investigate human factors in a specific case like this one.

Q.    How much of your work at SEA is dedicated to litigation support, like what you are doing in this case?

A.    I would say around 75 percent.

Q.    What is the remaining 25 percent of your work?

A.    It would be consulting work.

Q.    When you say consulting work, what does that mean?

A.    So a business may come to us and ask for ideas about how to improve their product safety or like ask me to review their warnings and instruction manuals to see if they would comply with ANSI standards and so on.

Q.    Okay.  So that would encompass the other 25 percent of your work at SEA?

A.    Yes.

Q.    For the 75 percent of your work that is dedicated to litigation support, like what you are doing in this case, how often are you retained by a manufacturer of a product or a law firm who represents a manufacturer of a product, like in this case?

A.    Hmm.  It is hard to come up with a specific number.  I would say about 30 percent.

Q.    Okay.  And what about the remaining 70 percent, who usually retains you in those types of cases?

A.    Well, I do vehicle accident cases.  So it is like, you know, a law firm that represents a person instead of a manufacturer.  I also have done premises liability work.  So a law firm that would represent, say, buildings or hotels or other businesses.

Q.    What percentage of your work -- and we are just talking about litigation support right now -- what percentage of that work involves you doing investigation or working on behalf of an injured person?

A.    I have done none so far.

Q.    So would all your litigation support work be on behalf of companies or law firms that

represent companies?

A.    Not exactly.  So like I said, I have done vehicle accident cases.  So I would work for law firms that represent like a Defendant, like the other driver in a case, so it is not an injured person, but it is also not a company or a business.

Q.    That makes sense.  Have you ever worked on a case involving a consumer product, like the pressure washer we are talking about here?

A.    Yes.

Q.    How many of those cases have you worked on?

A.    Do you mean just working on or like do you mean -- like what stage of working on are we talking about?

Q.    Have you ever performed a human factors analysis for a case involving a consumer product, like the pressure washer?

A.    Yes.  I would say about 15 cases.

Q.    What types of consumer products do those cases involve, just generally?

A.    Pressure cookers, laser machines, treadmill, hair dryer, wax candles, a number of things.

Q.    In those 15 cases, have you ever

arrived at the opinion that any of the warnings or instructions that came with the product were defective or inadequate?

A.    Yes.

Q.    Which case was that or cases?

A.    A case on a laser machine.

Q.    Do you happen to remember the Plaintiff's name in that case, or the laser machine company's name?

A.    The case is still ongoing, so I am not sure how much details of that case I can share, given that it is ongoing work.

Q.    If you can provide the name of either of the parties, that is all I will ask you about that case.

A.    Okay.  Give me one second.  It is called Pro-Tainer versus Bodolaser.

THE REPORTER:    Could you spell that?

THE WITNESS:    Yes.  P-r-o hyphen T-a-i-n-e-r and then versus Bodolaser, B-o-d-o-l-a-s-e-r.

BY MR. NAUMAN:

Q.    Okay.  My understanding is that you have been retained on behalf of Lowe's in this

Page 14

case; is that correct?

A.    Yes.

Q.    What were you asked to do?

A.    I was asked to affirm evaluations of the warnings and instructions.

Q.    Were you able to complete your task?

A.    Yes.

Q.    All right.  I am going to attach or I am going to mark as Exhibit 2, the SEA report that contains your opinions in this case.

(DEFENDANT'S EXHIBIT 2, SEA Report, was marked for identification.)

BY MR. NAUMAN:

Q.    Do you have that report available to you?

A.    Yes.

Q.    And that report should be dated October 28th, 2024; is that right?

A.    Correct.

Q.    Are all the opinions and testimony you intend to offer at the trial of this case contained within that report?

A.    So the report contains my opinions, based on the information that I have received by the date of the report, which is October 28th.

Page 15

If there is any additional information, that I may have additional opinions or I may change my opinions. But I cannot know for sure until I see what additional information we may have.

And then after the issue of the report, I receive the rebuttal of the report from Mr. Murray, so I do have some additional opinions based on Mr. Murray's report.

Q. Okay. What are your additional opinions based on his report?

A. So my opinions include -- well, just like, as a response to some of the points that Mr. Murray has in his report, for example, my first opinion is that Mr. Murray's claim that PPE is not a legitimate remedy or like a hazard control is false and unfounded.

My second opinion is that I do not agree with Mr. Murray's claim that the safety instructions in the owner's manual are defective and non-compliant with ANSI Z535.6.

Q. Are those the only two new opinions you have formed since issuing the original SEA report in October 2024?

A. Yes.

Q. Okay. And that is based on

Mr. Murray's supplemental and rebuttal report, dated December 2nd, 2024; is that right?

A.    Yes.

Q.    Have you reviewed the deposition testimony of one of SEA's other expert witnesses, Christopher Cassino?

A.    I have not.

Q.    Have you spoken with Mr. Cassino about his testimony in this case?

A.    I have not spoken to him directly.  I have spoke to my client about that depositions.

Q.    Did your client tell you what Mr. Cassino testified to during his deposition?

A.    We talked about some of the deposition -- about some questions during Mr. Cassino's depositions.

Q.    So what did you talk about?

A.    Like some -- Mr. Cassino's experience with the depositions, some questions that he got regarding like the device of the pressure washer.

Q.    And what questions do you remember talking about specifically?

A.    I think I mentioned the questions about whether the machine was defective or not.

Q.    And what did you learn about whether

the machine was defective or not?

A.    I did not learn anything new from that conversation.  He was just sharing like an example of a question that he had.

Q.    Do you remember the exact question that you discussed?

A.    Not that I recall, the exact wording of the question.  I just remember that it was something about the design and whether the design is defective or not.

Q.    Do you know whether Mr. Cassino was able to reach an opinion about whether the subject pressure washer is defective in its design or not?

A.    I cannot speak on his behalf, and I don't know.

Q.    Okay.  Another SEA expert that testified earlier today was Dr. Lauren Eichaker.

Have you spoken with her about her testimony?

A.    I have not.

Q.    Have you spoken with your client about her testimony?

A.    I have not.

Q.    Is it fair to say that you don't know what she said during her deposition this morning?

Page 18

A.   Yes.  I don't know anything about her deposition.

Q.   Okay.  So aside from the two additional opinions that you just shared with me in response to Mr. Murray's report, are all of your other opinions in this case contained within the October 28th, 2024, report issued by SEA?

A.   All of my opinions, based on the information that I have received so far.

Q.   Aside from Mr. Murray's report, have you reviewed any new information or new materials since issuing your report?

A.   I have reviewed the deposition transcript of Mr. Singleton's wife.

Q.   Okay.  Any other materials besides Mrs. Singleton's deposition transcript?

A.   No.

Q.   Did your view of Mrs. Singleton's deposition transcript change any of your opinions in any way?

A.   No.

Q.   Have you conducted all of the work, research and investigation you believe is necessary to arrive at full and complete opinions in this case?

A.    Yes.

Q.    Is there any work, research or investigation that you wish you would have done before today's deposition?

A.    No.

Q.    Are there any materials or literature or other research that you wish you would have reviewed before today's deposition?

A.    You mean for the preparations of this depositions or for the preparations of the report?

Q.    For the preparation of your opinions in this case.

A.    So my opinions was reached based on all the information that I have received and reviewed. And so the information that I received dictate my opinions, not the other way around.

So I cannot answer your questions, because I think the question has an underlying assumption that the opinions would dictate the amount of information that I should review.

Q.    Well, I guess what I am asking you is, do you feel like there is anything missing in terms of what you wanted to review, before issuing your opinions in your report?

A.    No.  I think my opinions were drawn

based on all the information that I have received.

Q. Okay. Were any time constraints imposed upon you in forming your opinions?

A. No.

Q. Were any cost constraints imposed upon you in forming your opinions?

A. No.

Q. So you could have done any amount of work, research or investigation within reason, of course, that you deem necessary to finish your work in this case; is that fair?

A. Yes.

Q. As you sit there today, is there any additional work that you intend --

THE REPORTER:    Excuse me, you froze.

MR. NAUMAN:    I froze?

THE REPORTER:    Yes.

BY MR. NAUMAN:

Q. Okay. So I will ask the question again. Dr. Nguyen, as you sit there today, is there any additional work, research or investigation you intend to do before trial?

A. Based on the current information that I have received, no. But, again, if I receive any

Page 21

additional information, that may change the course of action.

Q.    My understanding is that your opinions in this case are in the field of human factors; is that right?

A.    Yes.

Q.    Can you explain to the jury what the field of human factors is?

A.    So human factors is the study of how user, like human, would interact with the environment and the environment can be a lot of things, like a warning system, or the product.

Q.    Did you rely on any research or literature in forming your human factors opinions in this case?

A.    In this case, I relied on ANSI Z535.6, which is the national of standards for warnings and instructions, and then I relied on my expertise in the field.

Q.    Aside from the ANSI standard, is there any other literature that you are going to use at trial or say that you relied on in forming your human factors opinions?

A.    So I did not rely on like one single paper to form my opinions.  But when I say I relied

Page 22

on my expertise in the field, it means I relied on like the training that I have received for the past ten years, a lot of textbooks, a lot of papers that I have read throughout my career that has become like my current working knowledge at this point.

So it is quite difficult to pinpoint down like, you know, like specific papers that would -- that would be the source of my opinions.

I can provide papers that would agree or that would support what I have said in my report. But, again, like the opinions come from my working knowledge and training. So --

Q. Okay. I think I understand you.

But I just want to make sure, because I am entitled to know if you are going to be using any textbooks or journal articles or any other literature at trial.

And I understand you will use the ANSI standard at trial.

But is there any other book you are going to hold up or read from, or journal article, or research paper that you are going to read from that you are going to tell the jury proves your point in this case?

A. As of now, not that I can think of.

Page 23

Q.   Okay.  What is the methodology you used to form your opinions in this case?

A.   I used scientific methodologies accepted in the field of human factors.

So I reviewed the data that was provided to me, I conducted comparative analysis of the warnings and instruction against the ANSI standard.

I conducted deductive reasoning and cognitive testing of the details of the case against human factors principle before arriving at my conclusions.

Q.   Did you do any testing or studies in support of your opinions in this case?

A.   I did deductive reasoning and cognitive testing.

Q.   What was the cognitive testing that you did?

A.   So cognitive testing is where I, and deductive reasoning as well, is where I start with the general principles in human factors, then I make specific predictions from that; and then I pass those predictions against the details of the case.

Q.   Okay.  Did you do any types of

Page 24

experience -- strike that.

Did you do any types of experiments or case studies?

A.    For this case, no.

Q.    Okay.  Have you ever done experiments or case studies in other cases in support of human factors opinions?

A.    I have done behavioral testing for one case.

Q.    Why did you do behavioral testing in that case?

A.    Because that case did not have sufficient information to reach like a conclusion. So I had to conduct additional testing to gather the information that I want.

For this case, I believe that I have sufficient information to reach my conclusions, so I did not have to perform experiment or testing.

Q.    So if you turn to page 7 of your expert report -- or rather, SEA's expert report, there is a list of four bullet points under your name.

A.    Yes.

Q.    So that these are your final opinions in this case; is that accurate?

A.    Yes.

Page 25

Q.    Is a good summation of your opinions in this case that fourth bullet point that says, "Had Mr. Singleton followed the instructions in the owner's manual, the incident likely would have been avoided"?

A.    Yes.

Q.    Okay.  What instructions in the owner's manual, do you contend Mr. Singleton failed to follow?

A.    The manuals, the instructions say to wear eye protections, always wear eye protections before operating the pressure washer.

Q.    Are there any other warnings or instructions in the owner's manual that you contend Mr. Singleton failed to follow in this case?

A.    I believe that Mr. Cassino did talk about a failure to follow the start-up instructions.

But my scope of work, when I issued a report, was mainly to look into the specific warnings and instructions related to the injury and the incident, which is about eye protections.

Q.    Okay.  And maybe that is a good nuance. You are saying that Mr. Singleton may have failed to follow certain start-up instructions, but you

Page 26

are not going to give the opinion that such a failure caused his injuries; is that fair?

A.   Yes.

Q.   Okay.  Am I right that your sole opinion at trial will be that Mr. Singleton's failure to wear eye protection is the cause of his injuries?

A.   I think that may not be a good characterizations of my opinions.  I don't think I speak about causations like, you know, this failure caused that.

My opinions was more on that, yes, had he worn eye protection, he would have been able to avoid the injuries.

Q.   Okay.  And I hear what you are saying.  So I guess let me rephrase it this way:  Is the sole opinion you are going to offer at trial, going to be related to eye protection, rather than the failure to follow any other instruction or warning?

A.   Um, as of now, yes, based on the informations I have, yes.

Q.   Okay.  All right.  I want to go through some areas of agreement and see if you will agree with me on these questions.

Would you agree with me that

Mr. Singleton was injured while attempting to use the pressure washer in this case?

A.    Yes.

Q.    Would you agree with me that when Mr. Singleton was attempting to use the pressure washer, the connection between the hose and the pressure washer broke apart?

A.    I think Mr. Singleton was using the pressure washer and not just attempting to use it, but besides from that slight difference, yes.

Q.    Would you agree with me that when the connection between the hose and the pressure washer spray gun broke, part of the hose hit Mr. Singleton?

MR. COBB:        Objection.

THE WITNESS:        That is the information I have, based on his testimony.  I don't know for sure what happened.

BY MR. NAUMAN:

Q.    Okay.  Do you have any reason to is disbelieve Mr. Singleton's testimony about how the incident occurred?

MR. COBB:        Objection.

THE WITNESS:        I don't.  I think I am just pointing out that I don't have any

informations on exactly what happened to say I agree or disagree with that. I just take in the information provided to me from his testimony.

BY MR. NAUMAN:

Q. Would you agree with me that the fact that Mr. Singleton -- well, strike that.

Let me ask you this: Do you agree with me that Mr. Singleton was wearing safety glasses on his forehead as opposed to over his eyes when the incident occurred?

A. According to his testimony, yes.

Q. Would you agree with me that the fact that Mr. Singleton had not yet put his safety glasses down over his eyes, to cover his eyes, did not cause the hose to break apart from the spray gun?

MR. COBB:        Objection.

THE WITNESS:        Yes.

BY MR. NAUMAN:

Q. Would you agree with me that had the spray gun and hose not broken apart, Mr. Singleton would not have been injured?

MR. COBB:        Objection.

THE WITNESS:        Yes.

BY MR. NAUMAN:

Q.  Do you know what the safety hierarchy of product design is?

A.  Yes.

Q.  What is it?

A.  The hierarchy of hazard control talks about different strategies that one can use the address a hazard.  So it is that eliminations is at the top of the hierarchy.

If that is not possible, then there is guarding or like try to guard against the hazard.  That is the second.

And if that is not possible, then warning would be the other control to address the hazard.

Q.  Okay.  So in simplest terms works you agree that the hierarchy is design, guard, warn?

A.  Yes.

Q.  And as a hierarchy, those three items are in preferential order, right?

A.  Yes.

Q.  Designing out a hazard or risk of injury is more preferable to guarding against it, if it is possible, right?

A.  Yes.

Page 30

Q.   And both designing and guarding against the risk of injury are more preferable to warning or instructing against it, if it is possible, correct?

A.   Yes.

Q.   Would you agree with me that a product manufacturer should design out a risk of injury associated with its product if they are able to do so?

MR. COBB:          Objection.

THE WITNESS:          If possible, and if it is feasible or practical to do so.

BY MR. NAUMAN:

Q.   I may have already asked you this question or something similar.

Do you have any opinions about whether the subject pressure washer is or is not defective?

MR. COBB:          Objection.

THE WITNESS:          No, that is outside of my scope of work.

BY MR. NAUMAN:

Q.   Do you have any opinions as to whether any defect in the pressure washer itself caused or contributed to Mr. Singleton's injuries?

A.   That is outside of my scope of work.

Page 31

Q.   So you won't be offering any design defect opinions at trial, correct?

A.   Correct.

Q.   All right.  Do you have any opinions about -- strike that.

Because I want to cite the exact phrasing in the report.  It will be in the medical evidence section, if you want to start traveling to there.

First, let me ask you:  Do you have any qualifications in toxicology or pharmacology?

A.   No.

Q.   Do you have any experience analyzing or giving expert opinions on the effects of narcotics on a human being?

A.   No.

Q.   Okay.  I am looking at page 36 of the report, and there is a brief reference to Mr. Singleton has a history of marijuana use.

Are you familiar with that portion of the report?

A.   Yes.

Q.   Do you have any opinions, from a human factors perspective, about whether any prior marijuana use by Mr. Singleton caused or

Page 32

contributed to the incident or his injuries in this case?

A.    No, that is outside of my scope of work.

Q.    Okay.  Let's take a five-minute break. I am going to go over my notes.  And I might be finished.

A.    Okay.

THE VIDEOGRAPHER:    Please stand by. The time on the monitor is 2:21 p.m.  We are now off the record.

(Thereupon, a recess was taken.)

THE VIDEOGRAPHER:    The time on the monitor is 2:25 p.m.  We are now back on the record.

(DEFENDANT'S EXHIBIT 3, Testimony Log, was marked for identification.)

BY MR. NAUMAN:

Q.    Dr. Nguyen, as Exhibit 3 to your deposition, I am going to attach your testimony log that is included in the SEA report.

A.    Um-hum.

Q.    It lists one deposition which is the Clara S. Downing case.  Do you remember that?

A.    Yes.

Q. Is that the only case where you have testified either at deposition or trial?

A. Yes.

Q. What was that case about?

A. It was a vehicle accident.

Q. Did you perform a human factors analysis in that case?

A. Yes.

Q. What was the issue?

A. The driver claimed to have applied the gas pedal by mistake, and so I performed a human factors analysis of driver behaviors and driver errors.

Q. Did you perform any testing or experiments in that case?

A. No.

Q. Has your testimony ever been excluded or limited by a court before?

A. No.

Q. I know you are currently employed by SEA. Are you employed by any other employer?

A. No.

Q. Is 100 percent of your personal income derived from your work at SEA?

A. Yes.

Page 34

Q.   All right.  Thank you, Dr. Nguyen, I don't have any further questions for you.

MR. COBB:          I don't have any questions, thank you.

THE REPORTER:      Signature?

MR. COBB:          Do you want to read and sign, or are you good to go?  Do you know what that is?

THE WITNESS:       Yes, I would like to review it.

MR. COBB:          Okay.  All right.

MR. NAUMAN:        Then I will order the transcript synced to the video and let's go ahead and expedite that one to Friday too.

MR. COBB:          And if you would just give her an address or e-mail for her to send the transcript for your review, then we will be good.

THE WITNESS:       Okay.  I am going to put my e-mail across in the chat.

THE REPORTER:      Can we go off the record, the video?

THE VIDEOGRAPHER:  Please stand by.  The time on the monitor is 2:27 p.m.  This marks the conclusion of today's testimony given by Dr. An

Nguyen.  Total number of media used was two and will be retained by Veritext.

(The deposition concluded at 2:27 p.m.)

Page 36

DEPONENT CORRECTION SHEET

I, the undersigned, AN D. NGUYEN, Ph.D, do hereby certify that I have read the foregoing deposition and wish to make the following clarifications and/or corrections, if any.

PAGE    LINE    CHANGE          REASON

AN D. NGUYEN, Ph.D              Date

BDP

CERTIFICATE OF REPORTER
STATE OF SOUTH CAROLINA
COUNTY OF HORRY

I, Binnie Denise Purser, Registered Diplomate Reporter, Certified Realtime Reporter and Notary Public for the State of South Carolina at Large, do hereby certify that the witness in the foregoing deposition was by me duly sworn to testify to the truth, the whole truth and nothing but the truth in the within-entitled cause; that said deposition was taken at the time and location therein stated; that the testimony of the witness and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed by computer-aided transcription; that the foregoing is a full, complete and true record of the testimony of the witness and of all objections made at the time of the examination; and that the witness was given an opportunity to read and correct said deposition and to subscribe the same.

Should the signature of the witness not be affixed to the deposition, the witness shall not have availed himself/herself of the opportunity to sign or the signature has been waived.

I further certify that I am neither related to nor counsel for any party to the cause pending or interested in the events thereof.

Witness my hand, I have hereunto affixed my official seal on Wednesday, December 18, 2024, at Myrtle Beach, Horry County, South Carolina.

Binnie Denise Purser, RDR, CRR
My Commission expires
May 16, 2034

Page 38

David Cobb, Esquire

dcobb@turnerpadget.com

December 19, 2024

RE:  Singleton, Jr., Adam  v. Lowe's Home Centers, LLC
         12/17/2024, Dr. An D. Nguyen (#7029188)

     The above-referenced transcript is available for review.

     Dr. An D. Nguyen should read the testimony to verify its accuracy. If there are any changes, Dr. An D. Nguyen should note those with the reason on the attached Errata Sheet.

     Dr. An D. Nguyen should, please, date and sign the Errata Sheet and email to the deposing attorney as well as to Veritext at Transcripts-fl@veritext.com and copies will be emailed to all ordering parties.

     It is suggested that the completed errata be returned 30 days from receipt of testimony, as considered reasonable under Federal rules*, however, there is no Florida statute to this regard.

     If the witness fails to do so, the transcript may be used as if signed.

                  Yours,
                  Veritext Legal Solutions

     *Federal Civil Procedure Rule 30(e)/Florida Civil Procedure
        Rule 1.310(e).

**[& - arriving]**    Page 39

| **&** | **29401** 2:11 | **a** | 27:11 28:2,5,7 |
|---|---|---|---|

**&**

**&** 2:3,9

**1**

**1** 3:5 4:12 9:21 9:22
**1.310** 38:25
**100** 33:23
**12/17/2024** 38:4
**14** 3:6
**15** 12:19,25
**16** 37:22
**1600** 2:5
**17** 1:4
**17th** 4:3
**18** 37:16
**19** 38:3
**1:30** 1:13 4:2

**2**

**2** 3:6 14:9,11
**20** 2:4
**200** 2:11
**2023** 9:18
**2024** 1:4 4:3 14:18 15:23 16:2 18:7 37:17 38:3
**2034** 37:22
**244-3962** 2:6
**25** 10:13,24
**28th** 14:18,25 18:7

**29401** 2:11
**2:21** 32:10
**2:23** 1:8 4:18
**2:25** 32:14
**2nd** 16:2

**3**

**3** 3:6 32:16,19
**30** 11:8 38:16,24
**32** 3:6
**32801** 2:5
**33738** 37:20
**36** 3:3 31:17
**37** 3:4

**4**

**40** 2:10
**407** 2:6

**5**

**5** 3:2
**5757** 1:8 4:18
**576-2800** 2:12

**7**

**7** 24:19
**70** 11:9
**7029188** 38:4
**75** 10:12 11:1

**8**

**843** 2:12

**9**

**9** 3:5

**a**

**ability** 7:14
**able** 14:6 17:12 26:13 30:8
**above** 38:6
**accepted** 23:4
**access** 7:25 8:2 8:3,6
**accident** 11:12 12:3 33:5
**accuracy** 38:9
**accurate** 9:18 24:24
**action** 5:1 21:2
**adam** 1:5 4:14 5:10 38:4
**additional** 15:1 15:2,4,7,9 18:3 20:14,22 21:1 24:14
**address** 29:8,14 34:16
**administer** 4:24
**affiliations** 5:7
**affirm** 14:4
**affixed** 37:13,16
**afternoon** 4:1 5:9,21
**afternoon's** 7:18
**agree** 4:10 15:18 22:9 26:23,25 27:4

27:11 28:2,5,7 28:12,20 29:17 30:6
**agreement** 26:23
**ahead** 9:20 34:14
**aided** 37:9
**alcohol** 7:13
**allow** 8:4
**amount** 19:20 20:8
**analysis** 12:17 23:6 33:7,12
**analyzing** 31:13
**ansi** 10:22 15:20 21:16,20 22:18 23:7
**answer** 6:15,22 6:24 7:6 9:7,12 19:17
**answering** 6:17 9:9
**anybody** 8:15
**apart** 27:7 28:15,21
**appearance** 5:5
**appearances** 5:7
**applied** 33:10
**areas** 26:23
**arrive** 18:24
**arrived** 13:1
**arriving** 23:11

**article** 22:21
**articles** 22:16
**aside** 8:14 18:3
18:10 21:20
**asked** 14:3,4
30:14
**asking** 19:21
**associated** 30:8
**assumption**
19:19
**attach** 14:8
32:20
**attached** 38:11
**attempting** 27:1
27:5,9
**attorney** 5:8
38:13
**audio** 4:9
**authorized** 4:24
**available** 9:25
14:14 38:6
**availed** 37:13
**avenue** 2:4
**avoid** 26:14
**avoided** 25:5

**b**

**b** 13:22
**back** 32:14
**based** 14:24
15:8,10,25 18:8
19:13 20:1,24
26:20 27:17

**bdp** 36:21
**beach** 37:17
**beginning** 5:8
**behalf** 2:2,8
5:12 11:21,25
13:25 17:14
**behavioral** 24:8
24:10
**behaviors** 33:12
**believe** 18:23
24:16 25:16
**bhh** 1:8 4:18
**binnie** 1:17 4:23
37:3,21
**bodolaser** 13:17
13:21
**book** 22:20
**break** 7:3,6
28:15 32:5
**brief** 31:18
**bring** 7:17 8:25
**broke** 27:7,13
**broken** 28:21
**buildings** 11:16
**bullet** 24:21
25:2
**business** 10:18
12:6
**businesses** 10:6
11:17

**c**

**c** 2:1

**calhoun** 2:10
**called** 13:17
**camera** 4:6
**candles** 12:23
**career** 22:4
**carolina** 1:1
4:17 37:1,4,17
**case** 1:8 4:17
7:25 10:8,11
11:3,6 12:5,8,17
13:5,6,8,10,11
13:15 14:1,10
14:21 16:9 18:6
18:25 19:12
20:11 21:4,15
21:16 22:24
23:2,10,14,24
24:3,4,6,9,11,12
24:16,24 25:2
25:15 27:2 32:2
32:24 33:1,4,7
33:15
**cases** 11:11,12
12:3,11,19,21
12:25 13:5 24:6
**cassino** 16:6,8
16:13 17:11
25:16
**cassino's** 16:16
16:18
**causations**
26:10
**cause** 26:6
28:15 37:6,15

**caused** 26:2,11
30:23 31:25
**centers** 1:10
4:15 38:4
**certain** 25:25
**certificate** 3:4
37:1
**certified** 37:4
**certify** 36:2 37:5
37:14
**change** 15:2
18:19 21:1 36:4
**changes** 38:9
**characterizati...**
26:9
**charleston** 1:2
2:11 4:17
**chat** 34:20
**christopher**
16:6
**cite** 31:6
**civil** 38:24,24
**claim** 6:23
15:14,18
**claimed** 33:10
**clara** 32:24
**clarifications**
36:3
**clear** 9:14
**client** 8:11,15
16:11,12 17:21
**cobb** 2:10 5:11
5:11 6:21 27:15
27:23 28:17,23

**[cobb - deposition]** Page 41

30:10,18 34:3,6 34:11,15 38:1

**cognitive** 23:10 23:15,17,19

**come** 10:18 11:7 22:11

**commission** 37:21

**companies** 11:25 12:1

**company** 8:18 12:6

**company's** 13:9

**comparative** 23:6

**complete** 7:5 14:6 18:24 37:10

**completed** 38:16

**compliant** 15:20

**comply** 10:21

**computer** 37:9

**concise** 9:14

**concluded** 35:3

**conclusion** 24:13 34:25

**conclusions** 9:5 23:12 24:17

**conduct** 24:14

**conducted** 4:4 4:19 18:22 23:6 23:9

**connection** 4:6 27:6,12

**considered** 38:17

**constraints** 20:2 20:5

**consultant** 10:4

**consultation** 10:6

**consulting** 10:5 10:15,16

**consumer** 12:8 12:17,20

**contained** 14:21 18:6

**contains** 14:10 14:23

**contend** 25:8,14

**continue** 4:9

**contributed** 30:24 32:1

**control** 15:15 29:6,14

**conversation** 17:3

**convicted** 7:10

**cookers** 12:22

**copies** 38:14

**correct** 14:1,19 30:4 31:2,3 37:11

**correction** 3:3 36:1

**corrections** 36:3

**cost** 20:5

**counsel** 4:14 5:6 5:14 37:15

**county** 37:2,17

**course** 20:10 21:1

**court** 1:1 4:16 4:22 5:13 6:10 33:18

**cover** 28:14

**crime** 7:10

**crr** 1:17 37:21

**current** 20:24 22:5

**currently** 7:12 10:3 33:20

**curriculum** 9:17

**cv** 1:8 3:5 4:18 9:20,22

**d**

**d** 1:3 5:16 13:22 36:1,20 38:4,8 38:10,12

**data** 23:5

**date** 14:25 36:20 38:12

**dated** 14:17 16:2

**david** 2:10 5:11 38:1

**days** 38:17

**dcobb** 2:12 38:1

**december** 1:4 4:2 16:2 37:16 38:3

**dedicated** 10:10 11:2

**deductive** 23:9 23:15,20

**deem** 20:10

**defect** 30:23 31:2

**defective** 13:3 15:19 16:24 17:1,10,13 30:17

**defendant** 1:11 2:8 12:4

**defendant's** 3:5 3:6,6 9:22 14:11 32:16

**denise** 1:17 37:3 37:21

**depends** 4:5

**depo** 8:25

**deponent** 3:3 36:1

**deposing** 38:13

**deposition** 1:3 1:15 4:3,13,19 5:24 7:18 8:10 8:16,19,21 9:13 9:21 16:4,13,15 17:25 18:2,13 18:16,19 19:4,8

32:20,23 33:2 35:3 36:2 37:5,7 37:11,13

**depositions** 8:23 8:24 16:11,16 16:19 19:10

**derived** 33:24

**design** 17:9,9,13 29:3,17 30:7 31:1

**designing** 29:22 30:1

**details** 13:11 23:10,23

**device** 16:20

**dictate** 19:15,19

**difference** 27:10

**different** 29:7

**difficult** 6:11 22:6

**diplomate** 37:4

**directly** 16:10

**disagree** 28:2

**disbelieve** 27:21

**discussed** 17:6

**district** 1:1,1 4:16,16

**division** 1:2 4:17

**doing** 10:11 11:3,21

**downing** 32:24

**dr** 4:13 5:21 17:17 20:21

32:19 34:1,25 38:4,8,10,12

**drawn** 19:25

**driver** 12:5 33:10,12,12

**drug** 7:13

**dryer** 12:23

**duly** 5:17 37:5

**e**

**e** 2:1,1,4 13:21 13:22 34:16,20 38:24,25

**earlier** 17:17

**effects** 31:14

**eichaker** 17:17

**either** 13:13 33:2

**eliminations** 29:8

**email** 38:13

**emailed** 38:15

**employed** 33:20 33:21

**employer** 33:21

**encompass** 10:23

**entitled** 22:15 37:6

**environment** 21:11,11

**errata** 38:11,13 38:16

**errors** 33:13

**esq** 2:4,10

**esquire** 38:1

**evaluations** 14:4

**events** 37:15

**evidence** 31:8

**exact** 17:5,7 31:6

**exactly** 12:2 28:1

**examination** 3:1 5:19 37:8,11

**examined** 5:17

**example** 15:13 17:3

**excluded** 33:17

**excuse** 20:15

**exhibit** 3:5,6,6 9:21,22 14:9,11 32:16,19

**expedite** 34:14

**experience** 16:18 24:1 31:13

**experiment** 24:18

**experiments** 24:2,5 33:15

**expert** 16:5 17:16 24:19,20 31:14

**expertise** 21:18 22:1

**expires** 37:21

**explain** 21:7

**eye** 25:11,11,22 26:6,13,18

**eyes** 28:9,14,14

**f**

**fact** 28:5,12

**factors** 10:4,8 12:16 21:4,8,9 21:14,23 23:4 23:11,21 24:7 31:24 33:6,12

**failed** 25:8,15 25:24

**fails** 38:20

**failure** 25:17 26:2,6,10,19

**fair** 17:24 20:11 26:2

**false** 15:16

**familiar** 31:20

**far** 11:23 18:9

**feasible** 30:12

**federal** 38:18,24

**feel** 19:22

**field** 21:4,8,19 22:1 23:4

**file** 7:24 8:2

**filed** 4:16

**final** 24:23

**financially** 5:1

**finds** 6:21

**[fine - injured]**

fine  7:4
finish  6:14,16
  20:10
finished  32:7
firm  4:23 11:4
  11:13,15
firms  11:25 12:4
first  5:17 10:2
  15:13 31:10
five  32:5
fl  38:14
florida  2:5
  38:18,24
follow  25:9,15
  25:17,25 26:19
followed  25:3
following  36:2
follows  5:18
foregoing  36:2
  37:5,9
forehead  28:9
form  21:25 23:2
formed  15:22
forming  20:3,6
  21:14,22
forthepeople.c...
  2:6
four  24:21
fourth  25:2
friday  34:14
front  7:20,22,25
froze  20:16,17
full  18:24 37:9

further  34:2
  37:14

**g**

gas  33:11
gather  24:14
general  9:8,11
  23:21
generally  12:21
give  13:16 26:1
  34:16
given  13:12
  34:25 37:11
giving  31:14
glasses  28:8,14
go  4:10 6:4 7:6
  8:22 9:4,20
  26:22 32:6 34:7
  34:13,21
goes  6:5
going  4:2 7:1
  9:9 14:8,9 21:21
  22:15,21,22,23
  26:1,17,17 32:6
  32:20 34:19
good  4:1 5:9,21
  5:23 25:1,23
  26:8 34:7,18
graham  2:9
ground  6:4 8:22
guard  29:11,17
guarding  29:11
  29:23 30:1

guess  19:21
  26:16
gun  27:13 28:16
  28:21

**h**

hair  12:23
hand  37:16
happen  13:7
happened  27:18
  28:1
hard  11:7
hazard  15:15
  29:6,8,11,15,22
hear  6:20 26:15
heard  4:8
help  8:18
hereunto  37:16
hierarchy  29:2
  29:6,9,17,19
history  31:19
hit  27:13
hmm  11:7
hold  22:21
home  1:10 4:15
  38:4
horry  37:2,17
hose  27:6,12,13
  28:15,21
hotels  11:16
hum  32:22
human  10:4,7
  12:16 21:4,8,9
  21:10,14,23

23:4,11,21 24:6
31:15,23 33:6
33:11
hyphen  13:20

**i**

ideas  10:19
identification
  9:23 14:12
  32:17
impair  7:14
important  6:8
imposed  20:3,5
improve  10:19
inadequate  13:3
incident  25:4,22
  27:22 28:10
  32:1
include  15:11
included  32:21
income  33:23
influence  7:12
information
  8:12 9:4 14:24
  15:1,4 18:9,11
  19:14,15,20
  20:1,24 21:1
  24:13,15,17
  27:17 28:3
informations
  26:21 28:1
injured  11:22
  12:5 27:1 28:22

**[injuries - missing]**                                              Page 44

**injuries** 26:2,7
26:14 30:24
32:1
**injury** 25:21
29:23 30:2,7
**instructing** 30:3
**instruction**
10:21 23:7
26:19
**instructions**
13:2 14:5 15:19
21:18 25:3,7,10
25:14,18,21,25
**instructs** 6:22
**intend** 14:21
20:14,23
**interact** 21:10
**interested** 5:1
37:15
**internet** 4:6 8:3
**investigate** 10:7
**investigation**
11:21 18:23
19:3 20:9,23
**involve** 12:21
**involves** 11:20
**involving** 12:8
12:17
**issue** 15:5 33:9
**issued** 18:7
25:19
**issuing** 15:22
18:12 19:23

**items** 29:19

**j**

**job** 6:11
**joel** 2:15 4:21
**journal** 22:16
22:21
**jr** 1:5 38:4
**junior** 4:15
**jury** 21:7 22:23

**k**

**know** 4:3 7:4
8:6 11:13 15:3
17:11,15,24
18:1 22:7,15
26:10 27:18
29:2 33:20 34:7
**knowledge** 22:5
22:12

**l**

**l** 13:22
**laney** 2:9
**large** 37:5
**laser** 12:22 13:6
13:8
**lauren** 17:17
**law** 11:4,13,15
11:25 12:4
**learn** 16:25 17:2
**legal** 38:23
**legitimate** 15:15
**liability** 11:15

**likely** 25:4
**limited** 33:18
**line** 36:4
**list** 24:21
**listen** 9:14
**lists** 32:23
**literature** 19:6
21:14,21 22:17
**litigation** 10:7
10:10 11:2,19
11:24
**llc** 1:10 4:15
38:4
**location** 1:15
37:7
**log** 3:6 32:16,20
**long** 7:2
**look** 25:20
**looking** 31:17
**lot** 21:11 22:3,3
**lowe's** 1:10 4:15
5:12 13:25 38:4

**m**

**machine** 13:6,8
16:24 17:1
**machines** 12:22
**made** 37:8,10
**mail** 34:16,20
**make** 6:5,9,10
6:12,14,18 7:7
9:3 22:14 23:22
36:2

**makes** 12:7
**manner** 9:8,12
**manual** 15:19
25:4,8,14
**manuals** 10:21
25:10
**manufacturer**
11:4,5,14 30:7
**marijuana**
31:19,25
**mark** 9:20 14:9
**marked** 9:22
14:12 32:17
**marks** 34:24
**materials** 7:24
8:2 18:11,15
19:6
**matter** 4:14
**mean** 10:17
12:13,14 19:9
**means** 22:1
**media** 4:12 35:1
**medical** 31:7
**medication** 7:13
**meeting** 8:11,14
**mentioned**
16:23
**methodologies**
23:3
**methodology**
23:1
**minute** 32:5
**missing** 19:22

**[mistake - percent]**

**mistake** 33:11
**monitor** 32:10
  32:14 34:24
**morgan** 2:3,3
**morning** 17:25
**murray** 15:7,13
**murray's** 15:8
  15:14,18 16:1
  18:5,10
**myrtle** 37:17

**n**

**n** 2:1,4 13:21
**name** 4:21 13:8
  13:9,13 24:21
**narcotics** 31:14
**national** 21:17
**nauman** 2:4 3:2
  5:9,10,20 9:24
  13:23 14:13
  20:17,19 27:19
  28:4,19 29:1
  30:13,21 32:18
  34:12
**necessary** 8:5
  18:23 20:10
**neither** 37:14
**new** 15:21 17:2
  18:11,11
**nguyen** 1:3 4:13
  5:16,21 20:21
  32:19 34:1 35:1
  36:1,20 38:4,8
  38:10,12

**non** 15:20
**notary** 37:4
**note** 38:10
**notes** 32:6
**noticing** 5:8
**nuance** 25:23
**number** 4:12,17
  11:8 12:23 35:1

**o**

**o** 13:20,22,22
**oath** 4:25
**objection** 6:20
  27:15,23 28:17
  28:23 30:10,18
**objectionable**
  6:21
**objections** 5:3
  37:8,10
**occasionally**
  6:20
**occurred** 27:22
  28:10
**october** 14:17
  14:25 15:23
  18:6
**offer** 14:21
  26:17
**offering** 31:1
**official** 37:16
**okay** 6:4,6 7:21
  8:5,7,8 9:1,16
  10:23 11:9
  13:16,24 15:9

  15:25 17:16
  18:3,15 20:2,20
  22:13 23:1,25
  24:5 25:7,23
  26:4,15,22
  27:20 29:16
  31:17 32:5,8
  34:11,19
**once** 6:3
**ongoing** 13:10
  13:12
**operating** 25:12
**opinion** 13:1
  15:14,17 17:12
  26:1,5,17
**opinions** 9:5
  14:10,20,23
  15:2,3,7,10,11
  15:21 18:4,6,8
  18:19,24 19:11
  19:13,16,19,24
  19:25 20:3,6
  21:3,14,23,25
  22:8,11 23:2,14
  24:7,23 25:1
  26:9,12 30:16
  30:22 31:2,4,14
  31:23
**opportunity**
  37:11,13
**opposed** 28:9
**orange** 2:4
**order** 29:20
  34:12

**ordering** 38:15
**original** 15:22
**orlando** 2:5
**outcome** 5:2
**outside** 30:19,25
  32:3
**owner's** 15:19
  25:4,7,14

**p**

**p** 2:1,1 13:20
**p.a.** 2:9
**p.m.** 4:2 32:10
  32:14 34:24
  35:4
**padget** 2:9
**page** 24:19
  31:17 36:4
**paper** 21:25
  22:22
**papers** 22:3,7,9
**part** 27:13
**participants** 4:7
**parties** 4:10
  13:14 38:15
**party** 4:25
  37:15
**pass** 23:23
**past** 22:2
**pedal** 33:11
**pending** 37:15
**people** 8:18
**percent** 10:12
  10:13,24 11:1,8

11:10 33:23
**percentage**
  11:18,20
**perform**  24:18
  33:6,14
**performed**
  12:16 33:11
**person**  11:14,22
  12:6
**personal**  33:23
**perspective**
  31:24
**ph.d**  1:3 36:1,20
**pharmacology**
  31:11
**phrasing**  31:7
**pinpoint**  22:6
**place**  4:10
**plaintiff**  1:6 2:2
  4:14 5:10
**plaintiff's**  13:8
**please**  4:3 5:4
  5:14 32:9 34:23
  38:12
**pm**  1:13
**point**  22:5,24
  25:2
**pointing**  27:25
**points**  15:12
  24:21
**portion**  31:20
**possible**  6:6
  29:10,13,24
  30:3,11

**ppe**  15:14
**practical**  30:12
**predictions**
  23:22,23
**preferable**
  29:23 30:2
**preferential**
  29:20
**premises**  11:15
**preparation**
  19:11
**preparations**
  19:9,10
**prepare**  8:9,18
  8:23
**prepared**  7:19
**present**  2:14 5:6
**pressure**  12:9
  12:18,22 16:20
  17:13 25:12
  27:2,5,7,9,12
  30:17,23
**principle**  23:11
**principles**  23:21
**prior**  31:24
**privilege**  6:23
**pro**  13:17
**probably**  6:8
**procedure**
  38:24,24
**proceed**  5:15
**proceeding**  5:4
**product**  10:6,19
  11:4,5 12:8,17

13:2 21:12 29:3
  30:6,8
**products**  12:20
**protection**  26:6
  26:13,18
**protections**
  25:11,11,22
**proves**  22:23
**provide**  10:5
  13:13 22:9
**provided**  23:6
  28:3
**public**  37:4
**purser**  1:17
  4:23 37:3,21
**put**  28:13 34:20

**q**

**qualifications**
  31:11
**quality**  4:5,6
**question**  6:15
  6:16,17,24 7:6
  17:4,5,8 19:18
  20:20 30:15
**questions**  7:14
  9:7,9,10,12,15
  16:15,19,21,23
  19:17 26:24
  34:2,4
**quite**  22:6

**r**

**r**  2:1 13:20,21
  13:22
**range**  10:5
**rather**  24:20
  26:18
**rdr**  1:17 37:21
**reach**  17:12
  24:13,17
**reached**  19:13
**read**  22:4,21,22
  34:6 36:2 37:11
  38:8
**realtime**  37:4
**reason**  7:2,3
  20:9 27:20 36:4
  38:10
**reasonable**
  38:17
**reasoning**  23:9
  23:15,20
**rebuttal**  15:6
  16:1
**recall**  17:7
**receipt**  38:17
**receive**  15:6
  20:25
**received**  14:24
  18:9 19:14,15
  20:1,25 22:2
**recess**  32:12
**record**  4:2,11
  5:7 32:11,15

34:22 37:10

**recorded** 4:8,13 37:8

**recording** 4:5,9

**reference** 31:18

**referenced** 38:6

**regard** 38:19

**regarding** 16:20

**registered** 37:3

**related** 4:25 25:21 26:18 37:15

**relating** 7:24

**relevant** 9:4

**relied** 21:16,18 21:22,25 22:1

**rely** 21:13,24

**remaining** 10:13 11:9

**remedy** 15:15

**remember** 13:7 16:21 17:5,8 32:24

**remotely** 4:20

**rephrase** 26:16

**report** 3:6 7:19 8:12 9:4 14:9,11 14:14,17,22,23 14:25 15:5,6,8 15:10,13,22 16:1 18:5,7,10 18:12 19:10,24 22:11 24:20,20 25:20 31:7,18

31:21 32:21

**reported** 1:17

**reporter** 3:4 4:23 5:14 13:18 20:15,18 34:5 34:21 37:1,4,4

**reporter's** 6:10

**represent** 11:16 12:1,4

**representing** 4:21

**represents** 11:5 11:13

**request** 8:3

**research** 18:23 19:2,7 20:9,22 21:13 22:22

**response** 15:12 18:4

**retained** 11:3 13:25 35:2

**retains** 11:10

**returned** 38:16

**review** 8:24 9:2 9:3 10:20 19:20 19:23 34:10,17 38:7

**reviewed** 8:12 16:4 18:11,13 19:8,14 23:5

**right** 7:9 8:1 11:19 14:8,18 16:2 21:5 26:4 26:22 29:20,24

31:4 34:1,11

**risk** 29:22 30:2 30:7

**ruiz** 2:15 4:21

**rule** 6:8 38:24 38:25

**rules** 6:4 8:22 38:18

**s**

**s** 2:1,10 13:22 32:24

**safety** 10:6,19 15:18 28:8,13 29:2

**saying** 25:24 26:15

**says** 25:2

**sc** 2:11

**scientific** 23:3

**scope** 25:19 30:20,25 32:3

**screen** 4:8

**sea** 3:6 9:17 10:3,4,9,24 14:9 14:11 15:22 17:16 18:7 32:21 33:21,24

**sea's** 16:5 24:20

**seal** 37:16

**seamlessly** 6:5

**second** 13:16 15:17 29:12

**section** 31:8

**see** 10:21 15:4 26:23

**seen** 4:7

**send** 34:16

**sense** 6:12,18 7:7 12:7

**share** 13:11

**shared** 18:4

**sharing** 17:3

**sheet** 3:3 36:1 38:11,13

**sign** 34:7 37:14 38:12

**signature** 34:5 37:12,14,20

**signed** 38:21

**similar** 30:15

**simplest** 29:16

**single** 21:24

**singleton** 1:5 4:15 5:10 25:3,8 25:15,24 27:1,5 27:8,14 28:6,8 28:13,21 31:19 31:25 38:4

**singleton's** 18:14,16,18 26:5 27:21 30:24

**sit** 20:13,21

**slight** 27:10

**snauman** 2:6

**[sole - transcript]**    Page 48

sole  26:4,17
solutions  38:23
source  22:8
south  1:1 4:17
  37:1,4,17
speak  6:9 8:15
  17:14 26:10
specific  9:10
  10:8 11:8 22:7
  23:22 25:20
specifically
  16:22
spell  13:18
spoke  16:11
spoken  16:8,10
  17:18,21
spray  27:13
  28:15,21
stage  12:14
stand  32:9
  34:23
standard  21:20
  22:19 23:8
standards  10:22
  21:17
start  6:17 23:20
  25:17,25 31:8
state  5:4,6 37:1
  37:4
stated  37:7
states  1:1 4:16
statute  38:18
stenographica...
  37:8

steven  2:4 5:10
strategies  29:7
street  2:10
strike  24:1 28:6
  31:5
studies  23:13
  24:3,6
study  21:9
subject  17:12
  30:17
subscribe  37:12
sufficient  24:13
  24:17
suggested  38:16
suite  2:5,11
summation  25:1
supplemental
  16:1
support  10:10
  11:2,19,24
  22:10 23:14
  24:6
sure  6:5,7,9,14
  9:3 13:11 15:3
  22:14 27:18
swear  5:14
sworn  5:17 37:5
synced  34:13
system  21:12

**t**

t  13:21
tainer  13:17

take  4:10 7:3
  28:2 32:5
taken  4:13 5:24
  32:12 37:7
talk  8:19 9:6,8
  16:17 25:16
talked  16:14
talking  11:19
  12:9,15 16:22
talks  29:6
task  14:6
team  8:17,19
technology  4:20
tell  8:20 16:12
  22:23
ten  22:3
terms  19:22
  29:16
testified  5:18
  16:13 17:17
  33:2
testify  7:15 37:6
testimony  3:6
  14:20 16:5,9
  17:19,22 27:17
  27:21 28:3,11
  32:16,20 33:17
  34:25 37:7,10
  38:8,17
testing  23:10,13
  23:16,17,19
  24:8,10,14,18
  33:14

textbooks  22:3
  22:16
thank  34:1,4
thereof  37:15
thing  7:21
things  8:24,24
  8:25 9:1 12:24
  21:12
think  7:1 16:23
  19:18,25 22:13
  22:25 26:8,9
  27:8,24
three  29:19
time  1:13 5:4
  20:2 32:10,13
  34:24 37:7,8,10
times  6:2
today  5:22 7:2
  7:15 17:17
  20:13,21
today's  8:9,15
  19:4,8 34:25
top  29:9
total  35:1
toxicology
  31:11
training  8:17,19
  22:2,12
transcribed
  37:9
transcript  18:14
  18:16,19 34:13
  34:17 38:6,20

**[transcription - years]**                    Page 49

| | | | |
|---|---|---|---|
| **transcription** 37:9 | **understand** 6:24 7:14 9:16 22:13,18 | **videographer** 2:15 4:1,22 5:13 32:9,13 34:23 | **wearing** 28:8 |
| **transcripts** 38:14 | **understanding** 13:24 21:3 | **videotaped** 1:15 | **wednesday** 37:16 |
| **traveling** 31:8 | **unfounded** 15:16 | **view** 18:18 | **went** 8:11 |
| **treadmill** 12:23 | **unit** 4:12 | **virtual** 4:20 | **wife** 18:14 |
| **trial** 14:21 20:23 21:22 22:17,19 26:5 26:17 31:2 33:2 | **united** 1:1 4:16 | **virtually** 4:4 | **wish** 19:3,7 36:2 |

**transcription** 37:9
**transcripts** 38:14
**traveling** 31:8
**treadmill** 12:23
**trial** 14:21 20:23 21:22 22:17,19 26:5 26:17 31:2 33:2
**true** 37:10
**truth** 37:6,6,6
**truthfully** 7:15
**try** 29:11
**turn** 24:19
**turner** 2:9
**turnerpadget.c...** 2:12 38:1
**two** 15:21 18:3 35:1
**types** 11:10 12:20 23:25 24:2

**u**

**um** 9:3 26:20 32:22
**under** 7:12 24:21 38:18
**underlying** 19:18
**undersigned** 36:1

**understand** 6:24 7:14 9:16 22:13,18
**understanding** 13:24 21:3
**unfounded** 15:16
**unit** 4:12
**united** 1:1 4:16
**use** 21:21 22:18 27:1,5,9 29:7 31:19,25
**used** 23:1,3 35:1 38:20
**user** 21:10
**using** 4:20 22:15 27:8
**usually** 11:10

**v**

**v** 38:4
**vehicle** 11:12 12:3 33:5
**verify** 38:9
**veritext** 4:22,23 35:2 38:14,23
**veritext.com** 38:14
**versus** 4:15 13:17,21
**video** 4:9,13 34:13,22
**videoconferen...** 1:15 2:2,8

**videographer** 2:15 4:1,22 5:13 32:9,13 34:23
**videotaped** 1:15
**view** 18:18
**virtual** 4:20
**virtually** 4:4
**vitae** 9:17
**vs** 1:8

**w**

**waived** 37:14
**want** 7:3 8:6 10:2 22:14 24:15 26:22 31:6,8 34:6
**wanted** 19:23
**warn** 29:17
**warning** 21:12 26:19 29:14 30:2
**warnings** 10:20 13:1 14:5 21:17 23:7 25:13,21
**washer** 12:9,18 16:20 17:13 25:12 27:2,6,7,9 27:12 30:17,23
**wax** 12:23
**way** 18:20 19:16 26:16
**wear** 25:11,11 26:6

**wearing** 28:8
**wednesday** 37:16
**went** 8:11
**wife** 18:14
**wish** 19:3,7 36:2
**witness** 4:7 5:14 13:20 27:16,24 28:18,24 30:11 30:19 34:9,19 37:5,7,10,11,12 37:13,16 38:20
**witnesses** 16:5
**wording** 17:7
**work** 10:5,7,9 10:14,15,16,24 11:1,15,18,20 11:25 12:3 13:12 18:22 19:2 20:9,10,14 20:22 25:19 30:20,25 32:4 33:24
**worked** 12:7,11
**working** 11:21 12:13,14 22:5 22:12
**works** 29:16
**worn** 26:13

**y**

**years** 22:3

**[z535.6 - z535.6.]**                                             Page 50

| z | |
|---|---|
| **z535.6** | 21:16 |
| **z535.6.** | 15:20 |

South Carolina Rules of Civil Procedure

Part V. Depositions and Discovery

Court Rule 30

(e) Submission to Witness; Changes; Signing. When the testimony is fully transcribed the deposition shall be submitted to the witness for examination and shall be read to or by him unless such examination and reading are waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill or cannot be found or refuses to sign. If the deposition is not signed by the witness within 30 days of its submission to him, the officer shall sign it and state on the record the fact of the waiver or of the illness or absence of the witness or the fact of the refusal to sign together with the reason, if any, given therefor; and the deposition may then be used as fully as though signed unless on a motion to suppress under Rule 32(d)(4) the court holds

that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.

DISCLAIMER:  THE FOREGOING CIVIL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE STATE RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.